UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Cause 4:24CR112 HEA (SPM) |
| ) | |
| ) | |
| CHUCKIE MARION ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
AND MEMORANDUM OPINION
OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is currently before the Court on Defendant Chuckie Marion's ("Defendant" or "Marion") Motions to Suppress Evidence and Statements. ECF No. 60 & 61. For the reasons discussed below, the undersigned finds Marion's suppression motions should be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Marion is charged in a three-count superseding indictment with being a felon in possession of a firearm, possession with intent to distribute more than 28 grams of cocaine base, and possession of a firearm in furtherance of a drug trafficking crime. The charges stem from Marion's arrest by members of the St. Louis Metropolitan Police Department on December 29, 2023. Before Marion was arrested, police unsuccessfully attempted to conduct a traffic stop of the vehicle Marion was operating. Marion fled but was eventually apprehended after police, with

help of a police aircraft, pursued Marion first in his car then on foot after Marion parked the car behind a private residence and attempted to flee.

Police found and seized the gun with which Marion is charged from the floor of the front passenger seat of the car Marion had been driving during the pursuit. Police also found and seized the narcotics with which Marion is charged in the center console of the car. Marion made incriminating statements about what was in his car after he was arrested but before he was mirandized.

Marion contends the gun and narcotics should be suppressed as fruits of an unlawful search of his car. Marion also contends the incriminating statements he made to police should be suppressed because they were obtained in violation of the Fifth Amendment. The United States has opposed Marion's motions arguing Marion's post-arrest statement to police was voluntary and not in response to any custodial interrogation. The United States also contends Marion's flight from officers and incriminating statement to police gave officers probable cause to search his car but, even if police lacked probable cause, there was no Fourth Amendment violation because the gun was in "plain view"; the car had been abandoned by Marion by the time police searched it; and the evidence was inevitably going to be discovered when the police towed the abandoned car.

On May 6, 2025, the undersigned held an evidentiary hearing on Defendants' suppression motions. At the conclusion of the hearing, the parties were granted additional time to file post-hearing briefs. However, on May 21, 2025, while Marion's pretrial motions were pending, a federal grand jury returned a superseding indictment. The superseding indictment added the charge of possession of a firearm in furtherance of a drug trafficking crime based on the same conduct that had been litigated at the previously held suppression hearing. ECF No. 82. As such,

at an arraignment on the superseding indictment, the United States stated no additional disclosures would be forthcoming. Defense counsel adopted the defendant's previously filed suppression motions but requested additional time to file a post-hearing brief. The United States adopted its previously filed responses. The undersigned issued an order extending the time for the parties to file post-hearing briefs. *See* ECF No. 92. Post-hearing briefing concluded on July 21, 2025, and the matter is now ready for ruling.

After carefully considering the evidence presented at the hearing and the arguments and information provided in the parties' written submissions, the undersigned makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

At the evidentiary hearing, St. Louis Metropolitan Police Department (SLMPD) Officers Jeffrey Stoll and Terrance Ruffin testified on behalf of the United States. The United States also introduced other evidence including body and dashcam video and audio recordings of police interactions with Marion before, during, and after his arrest.  Marion did not offer any additional evidence or witnesses but cross examined the United States' witnesses. The undersigned found the testimony of both officers to be credible and generally supported by the audio and visual recordings submitted into evidence.

On December 29, 2023, officers Stoll and Ruffin were patrolling the Wells Goodfellow Neighborhood in the City of St. Louis when they observed a Lincoln Sedan (driven by Defendant Marion) exit a Crown Mart Gas Station lot and turn eastbound without properly signaling when exiting the lot. The officers conducted a U-turn to travel behind Marion's vehicle and noticed that the vehicle's Missouri Temporary Tag had expired.

The officers attempted to conduct a traffic stop by activating their lights and sirens; but once they did so, Marion attempted to flee running stop signs and driving at a high rate of speed at times through residential neighborhoods. Aided by an Air Support unit, the officers were able to track and continue pursuit of Marion, albeit from a distance. Air Support advised that the Lincoln entered the southern alley of the 5100 Block of St. Louis, quickly pulling into the rear car pad of 5122 St. Louis, where Marion apparently got out of the Lincoln and continued to flee on foot.

When officers Stoll and Ruffin arrived at the alley where the Lincoln was parked, they were not sure how many occupants had been in the car during the pursuit. They also did not know if there was anyone inside the now-parked car. Air support advised the officers that someone was running away from the Lincoln and when the officers got out of their police vehicle, they heard the rattling of a chain metal fence. Officer Ruffin pursued Marion but only after advising Officer Stoll to "clear the vehicle" for safety reasons to make sure there were no other suspects inside the vehicle who might have harmed the officers in any way. When Officer Stoll opened the driver's side door to clear the Lincoln, he saw an AR style firearm on the floor of the front passenger seat. Officer Stoll advised other officers who had responded to the scene about the gun.

Officer Ruffin, in the meanwhile, pursued and eventually apprehended Marion, placing him in handcuffs. Once Marion was handcuffed, Officer Ruffin placed him in the custody of Officer Nelson, another officer who had arrived to assist. The audio is difficult to hear but it appears that while standing outside of Officer Nelson's police vehicle Marion made a statement to Officers Ruffin and Nelson about his glasses that were broken during the arrest. *See* Govt. Ex. 9, 1:05-1:26. During the exchange, Marion made a reference to something being in his car

4

and appears to be asking the officers if he is going to be charged "for that." In response, one officer said, "I don't know what's in your car" and another asked, "What's in your car?" Marion responded, "I know what's in my car, the gun." *Id.* Around that time, Officer Stoll advised over the radio that he saw a gun in the Lincoln, Officer Nelson responded, "the driver just acknowledged it." *See* ECF No. 85, at p. 35.

Officer Ruffin left Marion in Officer Nelson's custody and returned to the Lincoln. Once there, he observed the gun reported by Officer Stoll and acknowledged by Marion. Officer Ruffin seized the gun, rendered it safe, and then placed it on the trunk of the car. After seizing the firearm, Officer Ruffin continued searching the car for other weapons or anything else that might be illegal. Officer Ruffin testified that the area was known to police as a high crime area and based on his experience, the presence of one gun under the circumstances made it likely there was one or more additional guns in the car. On cross examination, Officer Ruffin also testified that because police intended to tow the car, he also searched the car (including the glove compartment) for anything of value that might need to be placed on an inventory list. During the search, he found suspected narcotics in the center console of the car which he seized and sent to a lab for testing.

## CONCLUSIONS OF LAW

I.  **MOTION TO SUPPRESS STATEMENTS [ECF NO. 61]**

Marion seeks an order suppressing any statements he made to Officers Nelson and Ruffin, including his statement that there was a gun in his car. He contends that because those statements were made after he was handcuffed but before he was advised of his *Miranda* rights, they should be suppressed as the fruit of an unlawful custodial interrogation. In response, the United States argues Marion's statement to police was voluntary and not in response to any custodial interrogation. Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal

5

case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492.

The protections set forth by the United States Supreme Court in *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). For purposes of the Fifth Amendment, "interrogation" includes words or conduct that the officer should know are "reasonably likely to illicit an incriminating response from the suspect." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). However, not all statements made while in custody are products of interrogation. Rather, it is well-established that the United States is not precluded from introducing into evidence voluntary or spontaneous statements not in response to an interrogation whether or not *Miranda* warnings are given. *United States v. McGlothen,* 556 F.3d 698, 701 (8th Cir. 2009); *see also Chipps*, 410 F.3d at 445; *United States v. Hawkins,* 102 F.3d 973, 975 (8th Cir. 1996); *Hatten*, 68 F.3d at 262 ("[A] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings.").

In this case, the factual findings demonstrate that the exchange between Marion and Officers Nelson and Ruffin about what was in his car was initiated by Marion. Although one of

6

the officers can be heard on video asking, "what's in your car," taken in context, it is clear the officer was asking the question in response to Marion's spontaneous statement about something being in his car. *See* Govt. Ex. 9, 1:05-1:26. As the Eighth Circuit has held, "*Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer." *United States v. Chipps,* 410 F.23d 438, 445 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Nor does "[a]n officer's request for clarification of a spontaneous statement generally . . . constitute interrogation." *Id.* In sum, the undersigned finds no Fifth Amendment violation because Marion's pre-*Miranda* statements were voluntarily made.

## II.     MOTION TO SUPPRESS EVIDENCE [ECF NO. 60]

Marion seeks an order suppressing the gun and narcotics seized by police on grounds that they are the fruits of an unlawful search of his car. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment may not be introduced at trial to prove a defendant's guilt. *Elkins v. United States*, 364 U.S. 206, 223-24 (1960) (evidence obtained as the result of an unreasonable search and seizure by state officers cannot be used against defendant in federal court). Marion argues the search of his vehicle violated the Fourth Amendment because although it was conducted after his arrest, the search failed to satisfy the requirements for a valid search incident to arrest set out in *Arizona v. Gant,* 556 U.S. 332 (2009). While there may be some merit to Marion's argument that the search in this case did not satisfy the *Gant* requirements for a valid search incident to arrest, as the United States points out in its opposition brief, the facts and circumstances of the

7

search conducted in this case require consideration of other exceptions to the warrant requirement of the Fourth Amendment, including the automobile exception.

It is well settled that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions is the automobile exception. The automobile exception to the warrant requirement "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009). *See also United States v. Shackleford,* 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband."). If probable cause justifies the search of a vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Coleman*, 700 F.3d 329, 336 (8th Cir. 2012) (quoting *United States v. Ross*, 456 U.S. 798, 800 (1982)). The Eighth Circuit has repeatedly held that under the automobile exception, "[p]olice may search throughout both the passenger compartment and trunk of the automobile." *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989) (citing *Ross*, 456 U.S. at 825).

Probable cause is "a practical, nontechnical conception" that is based on "common sense conclusions about human behavior." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994). It is a "fluid concept" that turns on "the assessment of probabilities in

8

particular factual contexts" and is not "readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232. "Probable cause [to search a car] exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007). "In determining whether an officer had probable cause to search [a car], courts apply a commonsense approach and consider all relevant circumstances." *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012).

Based on the foregoing factual findings, by the time Officer Ruffin conducted a search of Marion's vehicle, Marion had fled from police at a high rate of speed when they activated lights and sirens to conduct a traffic stop; had parked his vehicle behind a private residence; and had fled, on foot, through the backyard of a private residence and was apprehended while attempting to hop over chain fence. The Supreme Court and the Eighth Circuit have held that unprovoked flight may create a reasonable suspicion in a police officer that criminal activity is afoot and will justify the stop of the suspect. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (holding that unprovoked flight is an act of evasion that is a relevant factor in determining reasonable suspicion); *see also United States v. Benson*, 686 F.3d 498, 502 (8th Cir. 2012) (holding that when police officers ordered a suspect to stop, the suspect's decision to increase his speed and try to evade the officers contributed to a finding of reasonable suspicion); *see also United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (holding that reasonable suspicion was justified when officers witnessed the suspect's flight at the sight of police); *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) (holding defendant who ran away from a police officer who was trying to detain him, "forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest [the defendant] for obstructing a peace officer and to search [the defendant] incident to that arrest.").

After he was apprehended, and before Officer Ruffin searched the car, Marion asked Officers Nelson and Ruffin if he would "be charged" for what he had in his car, indicating to the officers that there was a gun in his car—a statement that was immediately corroborated when Officer Stoll radioed to report his discovery of a gun in the car. These statements coupled with the officers' knowledge of the area as a high crime area contributed to the officers' belief that evidence of criminal activity was concealed in Marion's car. Considering Marion's flight from law enforcement and his spontaneous post-arrest statements suggesting consciousness of guilt, it was not unreasonable for the officers, who were familiar with the area as a high crime area, to believe that the gun found near the front passenger seat may be contraband. Nor was it unreasonable, under the totality of the circumstances, for the officers to believe that they would find other contraband, including other weapons, concealed in the car.

Based on a totality of the circumstances, Officer Ruffin had probable cause to believe Marion's flight from police was indicative of criminal activity and that the car, which police already knew contained an assault-styled rifle, likely contained evidence of that criminal activity. In sum, the search of Marion's car did not violate the Fourth Amendment because it fell within the automobile exception to the warrant requirement. Because the undersigned finds that the search of Marion's vehicle was supported by probable cause under the automobile exception, the undersigned finds it unnecessary to address the other alternative grounds for denial of Marion's motion raised by the United States.

Accordingly, for the reasons stated in this Memorandum Opinion,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [ECF No. 60] be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Statements [ECF No. 61] be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial will be set by separate order before the Honorable Henry E. Autrey.

                                                        _____
                                                        SHIRLEY PADMORE MENSAH
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of October, 2025.